IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JADA ANN THORNTON, an incapacitated
person, by her Mother and Next Friend,
NATALIE BRIGGS,
        Plaintiff,

v.                                              Civil Action No. 3:24cv859

CHESTERFIELD COUNTY
SCHOOL BOARD, *et al.*,
        Defendants.

## OPINION

Jada Ann Thornton is a mentally disabled student who reported harassment by a classmate to a teacher. Rather than take action to protect Thornton, school officials did nothing. The classmate later sexually assaulted Thornton on two occasions. From this conduct, Thornton brings claims against the defendants—Chesterfield County School Board ("School Board"), Anthony McLaurin, and three unidentified employees of Chesterfield County Public Schools ("CCPS")—for violating her Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, sex discrimination pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), disability discrimination pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), gross negligence, and willful and wanton negligence. The defendants move to dismiss these claims in their entirety for failure to state a claim. Because Thornton has not validly asserted that she suffered a constitutional injury, her § 1983 claim fails. So, too, do her sex and disability discrimination claims against McLaurin and the three unidentified employees (collectively, "the individual defendants"), as Title IX and Section 504 do not permit suits against individuals. Thornton has, however, plausibly stated sex and disability discrimination claims against the School Board. She also validly alleges

that the individual defendants committed gross negligence and willful and wanton negligence. The Court, therefore, will grant in part and deny in part the defendants' motion to dismiss.

## I. FACTS AS ALLEGED IN THE COMPLAINT

Thornton, a disabled adult with the mental faculties of a seven-year-old, formerly attended Thomas Dale High School in Chesterfield County, Virginia.[1] In late September or early October 2022, Thornton told a teacher that another student had been following her around, touching her in a way that made her feel uncomfortable, and harassing her to the point that she did not feel safe at school or on the bus because of the assailant's presence. Despite Thornton's report, school officials took no action to reprimand the assailant or to protect Thornton from him.

On November 2, 2022, Thornton told her mother, Natalie Briggs, about the assailant's harassing behavior. Thornton informed Briggs that she had told a teacher about her issues with the assailant, but that school administrators had taken no action to stop his harassment.

On November 3, 2022, the assailant assaulted Thornton by touching her breasts and vaginal area without her consent. The assault occurred after school and on school grounds as Thornton waited for the bus to take her home. No adults were present to protect Thornton or witness the assault.

The next morning, the assailant again sexually assaulted Thornton on the bus to school. The assailant sat next to Thornton on the bus and pinned her in the seat, leaving her with no way to exit. He then touched Thornton's breasts, penetrated her vagina with his fingers without her consent, and forcibly tried to place her hand on his penis. Like the previous day's encounter, no adults witnessed this assault. When Thornton arrived at school, she told a teacher about what

---

[1] Thornton suffers from autism spectrum disorder, epilepsy, spastic cerebral palsy, depression, anxiety, and rheumatoid arthritis.

2

happened. Thornton later received a medical evaluation and stayed home from school for around ten days.

## II. DISCUSSION[2]

Thornton, through Briggs, brings claims against (1) the individual defendants under 42 U.S.C. § 1983 for violating her Fourteenth Amendment rights, (2) all defendants for sex and disability discrimination, and (3) the individual defendants for gross negligence and willful and wanton negligence.[3]

### A. § 1983 Claim

Thornton raises Fourteenth Amendment claims against the individual defendants in both their individual and official capacities. Though not entirely clear, Thornton appears to assert that the individual defendants each violated her substantive due process rights and that McLaurin, the principal of Thomas Dale High School, further bears supervisory liability under § 1983.[4]

---

[2] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must present sufficient facts to state a facially plausible claim for relief. *See Short v. Harman*, 87 F.4th 593, 603 (4th Cir. 2023). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts must accept as true the complaint's factual allegations and draw all reasonable inferences in favor of the non-moving party, but need not accept the veracity of conclusions or threadbare recitals of the cause of action's elements. *Id.*; *Iqbal*, 556 U.S. at 678.

[3] In response to the defendants' motion to dismiss, Thornton also raises for the first time a claim under Title VI of the Civil Rights Act of 1964. Because "parties cannot amend their complaints through briefing," the Court will not consider this claim. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

[4] Thornton titles her § 1983 claim as one for supervisory liability under the Fourteenth Amendment and raises supervisor-related allegations against McLaurin. But she then claims that the three unidentified CCPS employees also violated her Fourteenth Amendment rights. (*See* ECF No. 6 ¶¶ 39–44.)

3

*1. Individual Capacity Claims*

*a. Substantive Due Process*

"In general, a defendant's mere failure to act does not give rise to liability for a due process violation." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019). This rule controls unless (1) a special relationship exists between the state and the plaintiff,[5] or (2) state officials created the danger that the plaintiff faced. *See Doe v. Rosa*, 795 F.3d 429, 437–38 (4th Cir. 2015). No special relationship exists between school officials and students "triggering the protections of the Due Process Clause." *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001). And "to establish § 1983 liability based on a state-created danger, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Rosa*, 795 F.3d at 439. Because Thornton alleges only inaction on the individual defendants' part, she fails to state valid substantive due process claims against them.

---

[5] The Supreme Court has defined a "special relationship" in the following way:

[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by . . . the Due Process Clause. . . . [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Ed.*, 3 F. App'x 25, 30 (4th Cir. 2001) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

### *b. Supervisory Liability*

A plaintiff seeking "to establish supervisory liability under § 1983" must show, among other factors, "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Id.* Because a subordinate teacher's failure to respond to a single report of harassment cannot establish "widespread" conduct violative of Thornton's constitutional rights, *id.*, Thornton's supervisory liability claim against McLaurin fails.

### 2. *Official Capacity Claims*

Courts must treat "[s]uits against state officials in their official capacity . . . as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[S]upervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer.'" *Waybright v. Frederick County*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). And even when a plaintiff has suffered a constitutional injury, official capacity liability attaches only when "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thornton not only fails to validly assert that she suffered a constitutional injury, *supra* Section II.A.1., but also alleges no facts indicating that any of the defendants acted pursuant to a governmental policy or custom. Accordingly, her official capacity claims fail.

### *B. Sex and Disability Discrimination*

Title IX and Section 504 provide that no person shall "be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance" due to their sex or disability. 29 U.S.C. § 794(a); *see* 20 U.S.C. § 1681(a). Because Title IX and Section 504 apply only to federally funded "program[s]" and "activit[ies]," 20 U.S.C. § 1681(a); 29 U.S.C. § 794(a), the individual defendants may not face liability under either statute, *see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, or other individuals."); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999) (no "individual liability under § 504"). Thus, the Court will consider those claims only as against the School Board.

#### *1. Title IX Sex Discrimination*

"[S]exual harassment constitutes 'discrimination' within the meaning of Title IX." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018). "To establish a Title IX claim based on student-on-student sexual harassment," a plaintiff must show that (1) she attended a school that received federal funds, (2) she "suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived [her] of equal access to the educational opportunities or benefits provided by [her] school," (3) "the school . . . had actual notice or knowledge of the alleged harassment," and (4) "the school acted with deliberate indifference to the alleged harassment." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021). The School Board does not dispute that Thornton's school received federal funds, but it challenges the sufficiency of the amended complaint as to the remaining three elements.

### *a. Severe, Pervasive, and Objectively Offensive Sexual Harassment*

"Harassment reaches the sufficiently severe or pervasive level when it creates 'an environment that a reasonable person would find hostile or abusive' and that the victim herself 'subjectively perceive[s] . . . to be abusive.'" *Jennings v. Univ. of N.C.*, 482 F.3d 686, 696 (4th Cir. 2007). Courts must look at all the surrounding circumstances—including "whether the harassment was frequent, severe, humiliating, or physically threatening, and whether it effectively deprived the victim of educational opportunities or benefits"—in evaluating this element. *Id.* A victim suffers the deprivation of educational opportunities or benefits "when the harassment . . . "has 'a concrete, negative effect on [her] ability' to participate in an educational program or activity." *Id.* at 699 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650–51 (1999)).

Thornton alleges that she reported to a teacher "that she was being followed around, touched in a way she did not like, and harassed" by the assailant, to the point that "she did not feel safe at school or on the bus."[6] (ECF No. 6 ¶ 20.) Though Thornton does not specify how frequently this harassment occurred, these allegations suffice to demonstrate that both a reasonable person would find the assailant's conduct abusive and that Thornton herself perceived his behavior as abusive. *See Davis*, 526 U.S. at 653 (finding error in dismissal of Title IX claim where plaintiff alleged inappropriate touching); *Litman v. George Mason Univ.*, 186 F.3d 544, 547, 557 (4th Cir. 1999) (affirming denial of motion to dismiss Title IX claim where harasser stalked victim). Moreover, the assailant's harassment caused Thornton to fear for her safety at school and ultimately led to him sexually assaulting Thornton on two occasions, which resulted in Thornton's

---

[6] The School Board asserts that Thornton fails to allege the requisite level of severity and pervasiveness because she complained to a teacher that, "on a single occasion," the assailant followed her around and inappropriately touched her. (ECF No. 10, at 15.) This misstates the amended complaint. Thornton alleges that she made a report to a teacher just once, not that the assailant harassed her just once.

7

removal from school for approximately ten days. Because the assailant's conduct had "'a concrete, negative effect on [Thornton's] ability' to participate" in school, she has sufficiently alleged the sexual harassment element of a Title IX claim. *Jennings*, 482 F.3d at 699 (quoting *Davis*, 526 U.S. at 650–51).

### b. *Actual Notice or Knowledge*

A school must have actual—not just constructive—notice of student-on-student sexual harassment to face liability under Title IX. *Doe*, 1 F.4th at 265. A school has actual notice "when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment." *Id.* Principals, assistant principals, and teachers all have the requisite level of authority "to address complaints of sexual harassment and to institute corrective measures." *Id.*; *see id.* at 271–72 (report made to principal and assistant principals); *Davis*, 526 U.S. at 634, 646–47 (report made to teacher). Moreover, a report alerting a school official "to the 'possibility' of sexual harassment" suffices to establish actual notice. *Doe*, 1 F.4th at 266. Because Thornton allegedly told a teacher that the assailant was following her around, had touched her in a way that made her feel uncomfortable, and harassed her to the point that she did not feel safe, she has adequately satisfied the actual notice requirement.

### c. *Deliberate Indifference*

"Under Title IX, a school acts with deliberate indifference where its 'response to the [alleged] harassment or [the] lack [of any such response] is clearly unreasonable in light of the known circumstances." *Id.* at 271 (quoting *Davis*, 526 U.S. at 648). "While deliberate indifference is a high standard that requires more than a showing of mere negligence, . . . half-hearted investigation or remedial action will not suffice to shield a school from liability." *Id.* (internal

8

brackets, citations, and quotation marks omitted). Because Thornton alleges that the school took no action at all in response to her report of the assailant's harassment, she sufficiently pleads that the School Board acted with deliberate indifference. *See id.* (evidence supported possible finding of deliberate indifference where school official "took no action to protect" student after she made a report of a student-on-student sexual assault).

\* \* \*

In sum, Thornton has sufficiently alleged that she attended a school that received federal funds; that she suffered severe, pervasive, and objectively offensive sexual harassment; that the School Board had actual notice of the harassment; and that the School Board was deliberately indifferent to her report. Thornton's Title IX claim against the School Board, therefore, survives.

### 2. *Section 504 Disability Discrimination*

As with her Title IX claim, Thornton may sufficiently plead a Section 504 claim if she plausibly states (1) that she suffers from a disability, (2) that a fellow student harassed her because of her disability, (3) "that the disability-based harassment was sufficiently 'severe, pervasive, and objectively offensive' that it effectively deprived [her] of 'access to educational benefits and opportunities' at school," and (4) "that the school knew about the disability-based student-on-student harassment and was deliberately indifferent to it." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 76 (4th Cir. 2016) (quoting *Davis*, 526 U.S. at 650). No question exists that Thornton suffers from a disability. Thornton also plausibly states that she suffered disability-based harassment, as she claims that the assailant "targeted" her because of "her disability and her vulnerability." (ECF No. 6 ¶ 58.) And Thornton sufficiently alleges that she suffered severe, pervasive, and objectively offensive harassment that deprived her of access to educational opportunities, and that the school knew of the assailant's harassment but acted with

deliberate indifference to it. *See supra* Sections II.B.1.a.–c. Thus, Thornton sufficiently pleads a Section 504 disability discrimination claim against the School Board.

### C. *Negligence-Based Claims*

#### 1. Sovereign Immunity

In moving to dismiss the amended complaint, the individual defendants assert that sovereign immunity bars Thornton's gross negligence and willful and wanton negligence claims against them. This defense cannot shield the individual defendants from liability, however, as sovereign immunity extends only to ordinary negligence claims in Virginia. *Cromartie v. Billings*, 837 S.E.2d 247, 254 (Va. 2020). Accordingly, the Court will proceed to whether Thornton's negligence-based claims sufficiently state a claim against the individual defendants.

#### 2. Failure to State a Claim

##### a. Legal Duty

The individual defendants assert that Thornton's negligence-based claims fail because they owed no legal duty to her. Ordinarily, no duty to protect against a third party's criminal acts exists. *A.H., a minor, by her next friends, C.H. & E.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 468 (Va. 2019). And though an exception arises if the plaintiff and defendants have a special relationship giving rise to a legal duty, Virginia does not recognize such a relationship between school officials and students because it "has no history—deep-rooted or otherwise—in the common law." *Burns v. Gagnon*, 727 S.E.2d 634, 643 (Va. 2012).

But even if no special relationship exists, school officials still owe a common law duty of ordinary care "to supervise and care for" their students. *Id.* (finding such a duty to exist despite holding that no special relationship existed between a vice principal and student); *see DJ by and through Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 341 (E.D. Va. 2020) ("Because

a school has an obligation to adequately supervise the activities of students within its charge and may be held liable for a foreseeable injury proximately related to the absence of such supervision, whether a duty of care exists may turn on the factual circumstances of the case."). As the Virginia Supreme Court explained in *Burns*, once parents send their children to school, "it [becomes] the responsibility of . . . school officials to supervise and ensure that students [can] have an education in an atmosphere conducive to learning, free of disruption, and threat to person." 727 S.E.2d at 643 (quotation marks omitted). Because that precise scenario exists here, Thornton has sufficiently alleged that the individual defendants owed her a duty of ordinary care.[7]

### c. Breach of Duty

#### i. Gross Negligence

Gross negligence "is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." *Id.* at 647 (quoting *Volpe v. City of Lexington*, 708 S.E.2d 824, 829 (Va. 2011)). "Whether or not gross negligence has been proved depends on the facts and circumstances of each case," so "[i]t is often a difficult task to determine whether the facts and the reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law." *Amisi v. Riverside Reg'l Jail Auth.*, 469 F. Supp. 3d 545, 574 (E.D. Va. 2020) (quoting *Wallower v. Martin*, 144 S.E.2d 289, 292 (Va. 1965)). Despite each individual defendant allegedly knowing about the assailant's harassment and

---

[7] A duty of ordinary care is sufficient to withstand dismissal of gross negligence and willful and wanton negligence claims. *See Burns*, 727 S.E.2d at 643 (vice principal sued for both negligence and gross negligence owed a duty to act "as a reasonably prudent person would under similar circumstances" (citation omitted)); *DJ*, 488 F. Supp. 3d at 343 (denying motion to dismiss gross negligence and willful and wanton negligence claims upon finding that the plaintiff-students adequately alleged that the defendant-school officials owed an ordinary duty of care); *Amisi v. Riverside Reg'l Jail Auth.*, 469 F. Supp. 3d 545, 574 n.7 (E.D. Va. 2020) ("[C]ourts have sustained gross and willful and wanton negligence claims based on the duty of ordinary care.").

11

Thornton's fears for her safety, they all failed to take any action whatsoever to protect Thornton from the assailant. Taken as true, these allegations plausibly indicate that the individual defendants acted without the slightest diligence or care in protecting Thornton. Thornton's gross negligence claim, therefore, survives.

### ii. *Willful and Wanton Negligence*

Willful and wanton negligence arises where one consciously disregards another's rights or acts with reckless indifference to consequences that the defendant knows will likely cause injury to another. *Cromartie*, 837 S.E.2d at 254. As noted, Thornton alleges "that she was being followed around, touched in a way she did not like, and harassed" by the assailant, such that "she did not feel safe at school or on the bus." (ECF No. 6 ¶ 20.) Thornton further alleges that the individual defendants each knew about this conduct. Because the assailant's acts evince a pattern of ongoing harassment, the allegations enable the Court to reasonably infer that the individual defendants knew that the assailant's harassment would continue and that failing to intervene would likely result in further injury to Thornton—whether in the form of continued stalking or touching or, as ultimately occurred here, an actual assault. Thus, Thornton sufficiently alleges a willful and wanton negligence claim.

### III. **CONCLUSION**

For the foregoing reasons, the Court will dismiss Thornton's § 1983 claims in full, as well as her Title IX sex discrimination and Section 504 disability discrimination claims against the individual defendants. Thornton's sex and disability discrimination claims against the School Board will stand, however, as will her gross negligence and willful and wanton negligence claims against the individual defendants.

The Court will issue an appropriate Order.

12

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 27 March 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

13